**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**STEVE HIGGINBOTHAM,**

      **Plaintiff,**                        **Civil Action No.**  2:18-cv-01493

**v.**

**RED ROOF INNS, INC.,**

      **Defendant.**

## COMPLAINT

Plaintiff Steve Higginbotham, by his counsel, Hoyt Glazer, Esq. and the Law Office of Hoyt Glazer, PLLC, files this action seeking redress and remedy arising from Defendant Red Roof Inns, Inc's deliberate and reckless failure to comply with the provisions of The Family and Medical Leave Act of 1993 and the West Virginia Human Rights Act.

## PARTIES

1. Plaintiff, Steve Higginbotham, is and was, at all times alleged herein, a citizen and resident of St. Albans, West Virginia.

2. Defendant, Red Roof Inns, Inc., is a foreign corporation doing business in Kanawha County, West Virginia, with its principal office located in Columbus, Ohio. Defendant operates hotels throughout the United States.

3. At all times alleged, Defendant acted by and through its agents, employees, supervisors, directors, members, officers and assigns and within the full scope of agency, office, employment, or assignment.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this civil action under Article III, §2 of the United States Constitution and 28 U.S.C. §1331.

5. Venue is appropriate in this case under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Kanawha County, which is in the Southern District of West Virginia.

**FACTS**

6. On or about November 20, 2015, Mr. Higginbotham began working for Defendant as a maintenance worker earning $15.67 per hour.

7. Approximately one year after starting his employment, Mr. Higginbotham suffered medical problems that required him to miss several days of work.

8. On or about 2016, Mr. Higginbotham reported his medical problems to his supervisor and advised that the same had caused him to miss work.

9. On or about September 7, 2017, Mr. Higginbotham reported to work.

10. Before his shift started, Mr. Higginbotham told the Defendant's representative at the hotel that he did not feel well, and an ambulance was called for him.

11. The ambulance transported Mr. Higginbotham to CAMC where he underwent surgery 12 hours later.

12. Mr. Higginbotham remained in the hospital for nine (9) days and missed the next seven (7) weeks of work.

13. During his treatment at the hospital, Mr. Higginbotham learned that he had a heart condition.

14. The Defendant approved Mr. Higginbotham for 7 weeks of FMLA leave while he was off work due to his serious health condition.

15. On or about October 20, 2017, Mr. Higginbotham returned to work, and notified his supervisor that his treating physician had scheduled him for a stress test.

16. Over the next month, Mr. Higginbotham was referred to a specialist and underwent medical procedures for the treatment of his heart condition.

17. When Mr. Higginbotham was off work to treat his heart condition, the Defendant hired another employee to perform his job.

18. On information and belief, Defendant planned for this employee to take Mr. Higginbotham's place.

19. Over the next couple months, the Defendant allowed Mr. Higginbotham to perform only routine maintenance work inspected by his supervisor.

20. Before he took FMLA leave, Mr. Higginbotham had performed all chores, electrical, dry wall, etc. without any supervision.

21. Mr. Higginbotham asked his supervisor why he had to inspect Plaintiff's work.

22. Mr. Higginbotham's supervisor claimed that he had authority to inspect Mr. Higginbotham's work as he saw fit.

23. Before having sought medical treatment and receiving FMLA leave, Mr. Higginbotham had not received any write-ups.

24. However, within one week after Mr. Higginbotham questioned the additional scrutiny of his work, his supervisor issued a write-up to Plaintiff for alleged inadequate work.

25. In early January 2018, Mr. Higginbotham suffered serious respiratory problems that caused him to miss additional work.

26. On or after January 9, 2018, Mr. Higginbotham notified his employer that he had a respiratory illness and medical appointments for the same.

27. On each day of work that Mr. Higginbotham missed after January 9, 2018, Mr. Higginbotham timely called his employer and notified it that he would be unable to work because of his respiratory illness.

28. On January 16, 2018, the Defendant fired Mr. Higginbotham because it claimed that he had failed to call in to report his absence for two straight days.

29. The Defendant knew or reasonably should have known Mr. Higginbotham had provided sufficient notice that he would not be reporting for work on the days he missed in January 2018 because he required treatment for his serious health condition and notified Defendant of the same.

30. As a result of his termination, Mr. Higginbotham has suffered lost wages and other damages.

**COUNT I: DISCRIMINATION/RETALIATION FOR EXERCISING RIGHTS AND ENGAGING IN CONDUCT PROTECTED UNDER THE FAMILY AND MEDICAL LEAVE ACT**

31. Plaintiff incorporates the previous paragraphs as if set forth herein.

32. Before requesting and/or requiring a leave of absence (FMLA leave), Mr. Higginbotham had been employed by Defendant for longer than twelve (12) months and had worked at least 1250 hours of service for Defendant during the prior twelve-month period.

33. When Plaintiff notified Defendant of his carpal tunnel and hernia, and/or his need to take time off from work to care for and treat the same, he gave adequate and proper notice of his need to take leave under the FMLA.

34. When Plaintiff requested and/or required leave, he was qualified and eligible for a leave of absence under the FMLA.

35. In notifying Defendant of his serious health conditions (respiratory) and/or his taking time to receive care for his respiratory condition, Plaintiff engaged in conduct protected under the FMLA that entitles him to all relief under the FMLA.

36. Defendant repeatedly failed to provide Plaintiff with FMLA's statutorily required individual notice(s).

37. Defendant took adverse action against Mr. Higginbotham in terminating him.

38. Plaintiff's protected conduct under the FMLA was a motivating factor in Defendant's decision to take adverse action against Plaintiff, up to and including termination.

39. Defendant's termination of Plaintiff after he notified Defendant that he had serious health conditions and/or took time off work due to his health conditions was reckless and in deliberate disregard of Plaintiff's rights under the FMLA and in violation of the FMLA's anti-discrimination and retaliation provisions.

40. Defendant's conduct, up to and including its termination of Plaintiff, is and was in bad faith, malicious, reckless and purposefully indifferent to Plaintiff's rights under the FMLA, and he seeks recovery as set forth in the prayer for relief.

**COUNT II: DISABILITY DISCRIMINATION**

41. Plaintiff incorporates the previous paragraphs as if set forth herein.

42. Plaintiff is a qualified person with a disability under the West Virginia Human Rights Act (W. Va. Code §5-11-9, et seq.).

43. Plaintiff has health conditions that substantially limit certain major life activities including, but not limited to, bending, lifting and reaching.

44. Alternatively, Defendant and its agents regarded Plaintiff as having an impairment which substantially limits one or more of his major life activities.

5

45. At all times alleged, the Plaintiff is and was qualified for the job he held with the Defendant because Plaintiff satisfies and satisfied the skill, experience, and other job-related requirements for the position he held as a foreman, and he was and is able to perform the essential functions of his job, with or without reasonable accommodation.

46. Defendant took adverse action against Plaintiff including, but not limited to, its termination of him.

47. Plaintiff's status as a person with a disability was a motivating factor in Defendant's decision to take the above referenced adverse action against Plaintiff.

48. Any reason alleged by Defendant for Plaintiff's termination including, but not limited to, Defendant's claim that Plaintiff resigned his job, is pretext for the real reason, namely, the intentional discrimination by Defendant against the Plaintiff based on his status as a person with a disability.

49. As a direct and/or proximate result of the intentional discriminatory acts and practices of Defendant, the Plaintiff has suffered and continues to suffer injury including, but not limited to, past and future loss of income and other benefits of employment, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, and damage to his reputation, as well as other past and future pecuniary losses.

50. Defendant knew or reasonably should have known that its actions against Plaintiff were false, wanton, willful, malicious, and intended to solely harm him and were indifferent to Plaintiff's rights under the West Virginia Human Rights Act. Wherefore, Plaintiff requests relief as set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks damages as set forth below:

6

On Counts I, grant Plaintiff back wages, liquidated damages, reinstatement and/or front pay, the costs of litigation, including court costs, any expert witness fees, reasonable attorneys' fees, and all other remedies allowed under the FMLA;

On Count II, grant Plaintiff actual damages for lost wages, front pay, back pay, fringe benefits, costs of obtaining new employment and other out of pocket expenses in an amount to be determined by a jury;

On Count II, grant Plaintiff general and compensatory damages for annoyance, inconvenience, embarrassment, humiliation and emotional distress suffered by Plaintiff as a direct and/or proximate result of Defendant's conduct;

On Count II, grant Plaintiff punitive damages in an amount to be determined by a jury and sufficient to deter future improper conduct and to punish the Defendant for its reckless and willful actions; and

Prejudgment and post-judgment interest on all amounts allowed by law;

Attorney fees; and

Such other relief as this Court deems fair and proper in the interest of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

PLAINTIFF, STEVE HIGGINBOTHAM,
By Counsel,


s/Hoyt Glazer
Hoyt Glazer, Esq. (WV Bar #6479)
LAW OFFICE OF HOYT GLAZER, PLLC
618 Tenth Street, Suite 105
Huntington, WV 25701
T. 681-204-3914
F. 681-245-6283
hoyt@hoytglaw.com

7